AF Approval _____   Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                    CASE NO. 6:19-cr-44-Orl-31EJK

DOUGLAS V. OAKES

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the defendant, DOUGLAS V. OAKES, and the attorney for the defendant, David Garvin, Esq., mutually agree as follows:

**A.** **Particularized Terms**

    1.    **Count Pleading To**

The defendant shall enter a plea of guilty to Count One of the Superseding Indictment.  Count One charges the defendant with tax evasion, in violation of 26 U.S.C. § 7201.

    2.    **Maximum Penalties**

Count One carries a maximum sentence of five years' imprisonment, a fine of up to $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a



term of supervised release of not more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:      That the defendant had a substantial income tax deficiency;

Second:   That the defendant made an affirmative act to evade or defeat the assessment or payment of the income tax; and

Third:     That the defendant acted willfully.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two through Seven of the Superseding Indictment, as well as Counts One through Seven of the original Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

2



5.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the charges giving rise to this plea agreement.

6.   <u>Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663(a) and (b), defendant agrees to pay restitution to the Internal Revenue Service in the amount of $982,964.

7.   <u>Adjusted Offense Level</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States, based on the information now available to it, believes that the defendant's adjusted offense level is, as determined below:

| <u>Guideline</u> | <u>Description</u> | <u>Levels</u> |
|---|---|---|
| USSG § 2T1.1<br>USSG § 2T4.1(H) | Base Offense | 20 |
| USSG § 2T1.1(b)(2) | Sophisticated Means | +2 |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| | | |
| Total Adjusted Offense Level | | 19 |



The defendant understands that this is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the

4



Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

**B.   Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such

5



counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.



3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant



promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.



6.   <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly



waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.      Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.



9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

11



attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea



and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this _13 ^TH_ day of November, 2020.

_____
DOUGLAS V. OAKES
Defendant

_____
David Garvin, Esq.
Attorney for Defendant

MARIA CHAPA LOPEZ
United States Attorney

_____
Chauncey A. Bratt
Assistant United States Attorney

_____
Jennifer M. Harrington
Assistant United States Attorney

_____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:19-cr-44-Orl-31EJK

DOUGLAS V. OAKES

## PERSONALIZATION OF ELEMENTS

First:      Did you have a substantial income tax deficiency for the tax years 2002 through 2005?

Second:     Did you make at least one affirmative act to evade or defeat the assessment or payment of the income taxes?

Third:      Did you act willfully?  In other words, did you act voluntarily and purposely with the specific intent to do something the law forbids?

14



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO. 6:19-cr-44-Orl-31EJK

DOUGLAS V. OAKES

## FACTUAL BASIS

### 1. BACKGROUND

Between 2009 and 2017, DOUGLAS V. OAKES ("OAKES") resided in Orange County, Florida, and Brevard County, Florida, in the Middle District of Florida. During that time period, Dealerindustry.com, LLC ("D.I.") d/b/a Automotive Capital Corporation, was a Florida Limited Liability Company, doing business in the Middle District of Florida and elsewhere, in which OAKES had a financial interest. Binx Property Group, LLC ("Binx") was a Delaware Limited Liability Company that was registered in the names of relatives of OAKES.

OAKES did not initially file tax returns for the 2002 to 2005 tax years. As a result, between 2006 and 2008, the Internal Revenue Service ("IRS") created and sent to OAKES substitute for returns ("SFRs") for the 2002 to 2005 tax years based on the wages and earnings reported for OAKES by other

15



companies. As of July 2015, OAKES had failed to respond to any of the SFRs that the IRS sent to him.

In September 2015, after the IRS notified OAKES of its intent to initiate collection enforcement actions, OAKES filed tax returns for the 2002 to 2005 tax years. Based on those returns, OAKES owed the following amounts of federal income taxes after accounting for employer withholdings, exemptions, and deductions:

| Tax Year | Amount of Income Based on Returns | Amount of Taxes Due Including Interest and Penalties |
|---|---|---|
| 2002 | $238,618 | $88,881 |
| 2003 | $292,393 | $65,198 |
| 2004 | $460,436 | $62,488 |
| 2005 | $415,605 | $91,247 |
| TOTAL: | $1,407,052 | $307,814 |

On June 21, 2016, OAKES paid $129,687 of the amount due, which constituted the principal owed but not any of the interest and penalties. OAKES never paid the IRS the remaining $178,127 due and owing.

## 2. OAKES'S EVASION OF PAYMENT OF TAX FOR 2002 TO 2005

Beginning in March 2008, and continuing through March 2018, OAKES willfully attempted to evade and defeat the payment of substantial income tax due and owing by him to the United States for the years 2002 to 2005, by committing the following affirmative acts:

16



a.      On March 14, 2008, OAKES had his daughters registered with the Florida Department of State as two of D.I.'s managing members instead of registering himself as a managing member of D.I., in order to conceal his financial interest in D.I.

b.      On August 3, 2015, after learning of the IRS's intent to enforce collection on his unpaid taxes, OAKES had himself removed as a signatory for D.I.'s business bank account.

c.      In or about August 2015, OAKES had his name and title removed from D.I.'s website.

d.      In or about August 2015, OAKES had his public profile identifying himself as D.I.'s CEO removed from the website LinkedIn.

e.      On August 28, 2015, OAKES submitted a Collection Information Statement to the IRS in which he falsely represented that he was not employed or self-employed and earned no income, and that he did not have a financial interest in any business entities, when, in fact, OAKES was working for and earning income from D.I. and had a financial interest in D.I.

f.      On September 1, 2015, OAKES submitted a sham rent agreement to the IRS in which it was represented that OAKES and his wife rented their home from D.I. for $1 per month.



g.      On November 5, 2015, OAKES purchased a beach-front home on Pyber Ln. in Merritt Island for $1,000,000 in the name of Binx, which company OAKES used as a nominee to disguise the fact that the home belonged to OAKES.

h.      In or about February 2017, OAKES caused a D.I. "Assignment of Membership Interest" and a D.I. "Assignment of Membership Interest and Bill of Sale" to be created, signed, and backdated to help conceal his financial interest in D.I.  OAKES then caused these documents to be produced to the IRS to help conceal OAKES's financial interest in D.I.

i.      Between July 2017 and March 2018, OAKES and A.D. had tax returns prepared for OAKES's deceased daughter, A.O., in which D.I.'s income from 2010 through 2016 was falsely claimed to be entirely A.O.'s income.

### 3.  TAX YEARS 2009 TO 2015

On September 8, 2015, in the Middle District of Florida, OAKES caused U.S. Individual Income Tax Returns for 2009, 2010, 2011, 2012, 2013, and 2014 to be submitted to the IRS.  OAKES verified under penalty of perjury that the information in these tax returns was true and correct.  But in fact, OAKES knew at that time that none of the returns was true and correct as to every material matter. Specifically, each return reported a tax due and

18



owing in the amount of $0, whereas, as OAKES well knew, his true tax due and owing was an amount substantially in excess of that amount.

In particular, OAKES reported that he had earned $3,500 in 2009, $2,000 in 2010, and just $1 in each of 2011 through 2014, and thus that he had no tax due for the entirety of 2009 through 2014. In fact, OAKES had earned significant additional income during each of the 2009 through 2014 tax years, including the following amounts of additional income which he obtained by paying his and his family members' personal expenses using D.I. revenue:

- 2009: $50,472

- 2010: $196,362

- 2011: $367,019

- 2012: $471,465

- 2013: $343,571

- 2014: $344,300

In addition, OAKES failed to file a tax return for 2015, despite having income in 2015 of $458,703.

The income that OAKES earned from 2009 through 2015 included payments that OAKES caused to be made from D.I.'s business bank account for the rent for OAKES's 4,321 sq. ft. lake-front home, OAKES's credit card payments, OAKES's wife's credit card payments, OAKES's wife's Mercedes



payments, OAKES's daughter's Mercedes payments, and OAKES's

daughter's Hummer payments, among other items.

Based on this income, OAKES's actual tax for 2009 to 2015 should

have totaled $804,837, broken down as follows:

- 2009: $13,187

- 2010: $67,458

- 2011: $127,934

- 2012: $165,649

- 2013: $127,880

- 2014: $126,295

- 2015: $176,434

## 4. <u>SOPHISTICATED MEANS AND TAX LOSS</u>

OAKES used sophisticated means to evade payment of his taxes. When

OAKES purchased his beach-front home on Pyber Ln. in Merritt Island in

November 2015, OAKES caused the home to be purchased using Binx, which

company was registered in the name of OAKES's mother and daughter.

OAKES used Binx as a nominee to disguise the fact that the home belonged to

OAKES.  In addition, to facilitate payment for this home, OAKES caused a

new entity to be registered in Delaware named Dealer Industry LLC, for

which OAKES caused a new bank account to be opened.  OAKES then



caused one of D.I.'s customers that owed D.I. money to route those funds through the bank account of the new Delaware entity, which funds OAKES then caused to be sent for the down payment on his new home, thereby further concealing OAKES's and D.I.'s financial connection to the residence.

The total tax loss in this case, taking into account both OAKES's evasion of the 2002 to 2005 taxes, and the tax loss for his 2009 through 2015 taxes, amounts to $1,112,651. Because OAKES paid the IRS $129,687 of this amount in 2016, the total restitution due in this case is $982,964.

21

